**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000300
23-JAN-2023
07:58 AM
Dkt. 66 SO**

NO. CAAP-22-0000300

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF JFJ

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. FC-S 19-00270)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Hiraoka and Nakasone, JJ.)

Father-Appellant (**Father**) appeals from the Family Court of the First Circuit's (**Family Court**)[1] April 20, 2022 Order Terminating Parental Rights (**TPR Order**), terminating Father's parental rights over JFJ. JFJ is a male child who was ten years old when he was removed from the family home on November 13, 2019. JFJ's mother had passed away on September 8, 2019. JFJ was placed in protective custody when Petitioner-Appellee Department of Human Services (**DHS**) confirmed a threat of sexual abuse to JFJ, following a report by JFJ's 14-year-old half-sibling,[2] of sexual abuse by Father. JFJ's date of entry into foster care was January 12, 2020.

---

[1] The Honorable Jessi L.K. Hall presided.

[2] This half-sibling was Mother's child from a relationship prior to her relationship with Father.

On appeal, Father contends that the Family Court erred by finding that DHS provided Father with a reasonable opportunity to reunify with JFJ because DHS failed to arrange "contact/visitations" between Father and JFJ, and failed to provide "clarity in the services [Father] was required to complete." Father also contests all findings of fact (**FOFs**) and conclusions of law (**COLs**) in the Family Court's June 2, 2022 Findings of Fact and Conclusions of Law (**FOF/COL**), but only presents discernible arguments with regard to FOFs 20, 28, 42, 57, 64-66, and 74 and COLs 12, 13, and 15.[3]

---

[3] Father's challenges to the remaining FOFs are waived. See Rules Expediting Child Protective Appeals Rule 11(a)(4) (requiring legal argument for each point of error). The challenged FOFs provide:

> 20. At the June 2, 2021 hearing, Father contested the Motion to Terminate Parental Rights and the Court set a trial. Also at that hearing, the Court ordered the DHS Family Service Plan dated May 12, 2021, without modification. There is a typographical error on the second page of the Order Concerning Child Protective Act filed on June 9, 2021, indicating that the May 12, 2021 service plan "as modified" was explained and understood by the parties present at the hearing, however there are no modifications to the service plan and the Court corrected item "3" of the orders on the fourth page of the same document indicating the service plan was ordered without modification(s). Father did not object to the ordering of the service plan.

> . . . .

> 28. Between the continuance of the trial on January 27, 2022, and the trial on April 18, 2022, Father filed a motion for immediate review and a motion to continue the trial. The first motion cited confusion over the services that were required by the Court due to the typographical error in the Order Concerning Child Protective Act filed on June 9, 2021, as well as Father's counsel not having the entire case file. Subsequent to the filing of the motions and prior to the court hearing, Father's counsel had obtained the remainder of the file that was previously missing and at the hearing on the motions on March 9, 2022, the Court clarified with Father and his counsel what was expected by the Court with respect to the service plan. The motion to continue was denied at the pretrial hearing on March 9, 2022.

> . . . .

42. In compliance with the Court ordering the DHS to refer the Child for therapy to address his relationship with Father, DHS arranged for the Child to participate in treatment with his therapist from the Child & Family Service Ohana Sex Abuse Treatment Program, JESSICA CANDASO because he already had established a relationship with her. While repairing a relationship between a child and an untreated sex offender is not a part of the Child & Family Service Ohana Sex Abuse Treatment Program, the therapist conducted sessions and discussed the Child's relationship with Father and the Child's preference for permanency.

. . . .

57. On June 2, 2021, the court ordered Father to complete all of the services in the service plan which includes a psychosexual evaluation, sex offender treatment, substance abuse assessment and treatment, parenting classes, cooperate and work in conjunction with the DHS. Father did not object to the service plan being ordered.

. . . .

64. Under the circumstances presented in this case, Father was given every reasonable opportunity to effect positive changes to provide a safe family home and to reunify with the Child.

65. Father is not presently willing and able to provide the Child with a safe family home, even with the assistance of a service plan.

66. Father will not become willing and able to provide the Child with a safe family home, even with the assistance of a service plan within a reasonable period of time, which shall not exceed two years from the [C]hild's date of entry into foster care.

. . . .

74. [DHS Social Worker] JENNY GAO testified that Father regularly stated that he did not understand the service plan and that she continued to explain it to him verbally and in writing.

The challenged COLs state:

**Parental Unfitness**

12. The legal mother, legal father, adjudicated, presumed, or concerned natural father, as defined under HRS Chapter 578A, are not presently willing and able to provide

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Father's points of error as follows, and affirm.

**Lack of reasonable opportunity to reunify due to alleged lack of "contact/visitations"**

Father first challenges FOF 42 and contends that DHS failed to provide him with a reasonable opportunity to reunify with JFJ because DHS did not comply with the Family Court's order to refer JFJ to a therapist to address his reluctance to visit or have a relationship with Father, and due to the lack of "contact/visitations" with JFJ.

"The child protective services . . . shall be provided with every reasonable effort to be open, accessible, and communicative to the persons affected by a child protective proceeding without endangering the safety and best interests of the child under this chapter."  HRS § 587A-2 (2018).  "Every reasonable opportunity should be provided to help the child's legal custodian to succeed in remedying the problems that put the child at substantial risk of being harmed in the family home."  Id.  "DHS is under an obligation to provide a reasonable

---

the Child with a safe family home, even with the assistance of a service plan.

13.  It is not reasonably foreseeable that the legal mother, legal father, adjudicated, presumed, or concerned natural father, as defined under HRS Chapter 578, will become willing and able to provide the Child with a safe family home, even with the assistance of a service plan, within a reasonable period of time.

**The Permanent Plan**

. . . .

15.  The Permanent Plan dated May 12, 2021, is in the best interests of the Child.

4

opportunity to parents through a service plan to reunify the family" and "to make reasonable efforts to reunite parent and child." In re Doe, 100 Hawaiʻi 335, 343, 60 P.3d 285, 293 (2002) (interpreting HRS Chapter 587, the predecessor to HRS Chapter 587A).

Here, substantial evidence shows that DHS re-referred JFJ for therapy with Jessica Candaso (**Candaso**) so JFJ could explore his feelings toward Father and potential reunification with him; Candaso worked with JFJ to process his feelings about Father and what JFJ wanted in a relationship with Father; JFJ told Candaso that he did not want to have contact with Father; Candaso did not recommend allowing JFJ to have contact with Father until Father completed sex offender treatment, which would take one to two years or longer to complete; and at the time of trial, DHS was not concerned that JFJ had any unresolved issues regarding Father. Regarding Father's objection to lack of contact or visitation with JFJ, the Family Court pertinently found that: JFJ "consistently informed" the DHS social worker, the guardian ad litem (**GAL**), and Candaso that he did not want visits with Father; JFJ told the Family Court in a conference that he did not want communication with Father; COVID-19 visitation polices at Oahu Community Correctional Center (**OCCC**), where Father was incarcerated until January 2022, prohibited visitation with JFJ; and JFJ was also prohibited from visiting Father due to the no-contact order in the criminal sexual assault case against Father. FOFs 43-46.[4] The criminal case involved allegations of sexual abuse by Father against JFJ's half-sibling, which occurred when she was 12 years old and continued until she was 14 years old in 2019, when Father was

---

[4] Unchallenged FOFs are binding on appeal. In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002).

arrested for these sexual abuse allegations.  The record does not reflect that DHS failed to comply with the Family Court's order.  FOF 42 is supported by substantial evidence and is not clearly erroneous.  See In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001) (reviewing FOFs under the clearly erroneous standard of review).  Under the circumstances of this case, the lack of Father's "contact/visitations" with JFJ did not constitute a denial of a reasonable opportunity to reunify with JFJ.  See Doe, 100 Hawaiʻi at 343, 60 P.3d at 293.

**Lack of reasonable opportunity to reunify due to alleged lack of clarity in required services**

Father's next argument challenges FOFs 20, 28, 57, 64, and 74, contending that the Family Court erred by concluding that there were "reasonable efforts regarding the service plan," because DHS did not provide "clarity in the services" he was required to comply with to reunify with JFJ.  Father argues that there "clearly was confusion and misunderstanding" about what the Family Court was ordering Father to comply with in order to reunify with JFJ.  Father claims "[t]he only service that was ever agreed upon and ordered by the trial court was the parenting."  Father argues that at the July 13, 2020 hearing on the Petition for Temporary Foster Custody, the service plan was modified to only include parenting services, and that the psychosexual evaluation, sex offender treatment, and substance abuse assessment and treatment were removed.  Father appears to claim that the Family Court ordered this "modified" version of the May 12, 2021 service plan at the June 2, 2021 hearing.  The gist of Father's argument is that because there was confusion about whether the service plan was modified to only require parenting services and not the sex offender and substance abuse-related services, DHS did not make reasonable efforts regarding

6

the service plan, and he was denied a reasonable opportunity to reunify with JFJ.

In challenged FOF 20, the Family Court explained that it had ordered the May 12, 2021 service plan, without modification, at a June 2, 2021 hearing. The Family Court clarified that the "as modified" notation on the June 9, 2021 order was a typographical error, and that the May 12, 2021 service plan was ordered without modification. FOF 20. Our review of the record supports the Family Court's FOF 20 that an unmodified version of the May 12, 2021 service plan was ordered at the June 2, 2021 hearing, and Father's contention that a modified version of the May 12, 2021 service plan that only required parenting services and not the remaining services was ordered, is without merit.

The record reflects that at the July 13, 2020 hearing on DHS's Petition for Temporary Foster Custody, the Family Court did modify the February 7, 2020 service plan to only include parenting services (**Modified February 7, 2020 service plan**),[5] because parenting services were the only services the parties thought were available to Father during his incarceration at OCCC.[6] However, a subsequent May 12, 2021 service plan reinstated all of the initial services ordered by the Family Court, including the sex offender and substance abuse-related services, with no modifications **(Unmodified May 12, 2021 service plan)**. The Family Court's June 9, 2021 Orders Concerning Child

---

[5] The Modified February 7, 2020 service plan, which is attached as Exhibit "A" to the Family Court's July 13, 2020 Orders Concerning Child Protective Act, reflects the Family Court's modification to remove the psychosexual evaluation, sex offender treatment, and substance abuse assessment and treatment services, and only includes parenting services.

[6] The record reflects that from the time of his January 15, 2020 initial appearance in this case until January 2022, Father was incarcerated at OCCC, and consequently not able to participate in any services during that time period -- including the parenting classes that the parties initially thought were available to Father at OCCC. See FOFs 12, 24, 58.

Protective Act for the June 2, 2021 hearing stated that the "May 12, 2021" service plan was ordered with the "as modified" box checked off; but "Exhibit A" attached to the June 9, 2021 order, is the Unmodified May 12, 2021 service plan with all services included. The transcript of the June 2, 2021 hearing reflects that the Family Court ordered the "service plan dated May 12th, 2021," which is the Unmodified May 12, 2021 service plan. The transcript also reflects that Father did not object to the Family Court's ordering of the May 12, 2021 service plan, and that his objection at the hearing was related to communication issues between Father and JFJ. Thus, substantial evidence supports the Family Court's finding in FOF 20 that the "as modified" notation in the June 9, 2021 order was a clerical error and that the Family Court ordered the Unmodified May 12, 2021 service plan. See Doe, 95 Hawai'i at 190, 20 P.3d at 623.

The Family Court also found that the DHS social worker credibly testified that during the time Father was incarcerated at OCCC, she spoke with Father regarding the service plan, face to face and via telephone. FOFs 61, 73. In response to Father's statements that he did not understand the service plan, the DHS social worker "continued to explain it to him verbally and in writing." FOF 74. Thus, even if the June 9, 2021 order contained the typographical error regarding a "modified" May 12, 2021 service plan, the record does not support Father's claim of confusion over what services he was supposed to complete.

Assuming *arguendo* there was confusion regarding the Unmodified May 12, 2021 service plan, the record also reflects that Father was provided an opportunity to participate in all of the services when he was released on bail on January 21, 2022. FOFs 24, 58. On January 27, 2022, after Father's release from OCCC, DHS made referrals for Father to participate in a

substance abuse assessment, psychosexual evaluation, sex offender treatment, and parenting services.  Even after being referred for all services following his release on bail, however, Father still declined to participate in any services other than parenting, which had started in April 2022.  FOF 59. Based on the record set forth above and the unchallenged findings, we conclude that FOFs 20, 28, 57, 64, and 74 are supported by substantial evidence and not clearly erroneous. See Doe, 95 Hawai'i at 190, 20 P.3d at 623.  Father's challenge that he was denied a reasonable opportunity to reunify with JFJ due to an alleged lack of clarity in the services Father needed to complete is without merit.  See Doe, 100 Hawai'i at 343, 60 P.3d at 293.

> **The evidence and unchallenged findings support the Family Court's parental unfitness determination and the Permanent Plan**

Lastly, Father contends, generally, that the Family Court's FOFs 65-66 and COLs 12, 13, and 15 were clearly erroneous.

The record and the Family Court's unchallenged findings support the Family Court's FOFs 65-66 that Father was not presently willing and able, nor would he become willing or able, to provide JFJ with a safe family home within a reasonable period of time pursuant to HRS § 587A-33(a)(1)-(3).[7]  The

---

[7]    HRS § 587A-33(a) (2018) provides in pertinent part,

> (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>
> (1)   A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;

unchallenged findings indicate that Father was an untreated sex offender unwilling to complete, and incapable of completing, sex offender treatment within a reasonable time, without which reunification could not occur. Specifically, the Family Court found, and Father has not challenged, that: upon review of a videotaped interview of JFJ's half-sibling, the sexual abuse allegations she made against Father, consisting of multiple incidents of digital and penile penetration starting from when she was 12 years old, were credible; that upon review of a videotaped interview of JFJ, JFJ's statements regarding the sexual abuse of his half-sibling that JFJ heard or observed, were credible; that JFJ consistently told the DHS social worker, the GAL, and his therapist that he did not want visits with Father; that JFJ told the Family Court the same during a conference with the court; that JFJ told the DHS social worker, the GAL, the therapist, and Father that he wanted to be adopted by the current resource caregivers; that Father was ordered by the Family Court to complete sex offender treatment and upon being released on bail in January 2022, declined to participate in sex offender treatment; that Father was an "untreated sexual offender" who had not addressed sex offender treatment for 27 months; and that sex offender treatment generally takes one to two years and sometimes longer than two years to complete. FOFs 8, 43, 44, 57, 59, 61, 62, 80, 82, 83. Thus, the record and the Family Court's unchallenged findings support the Family Court's

---

(2) It is not reasonably foreseeable that the child's parent whose rights are subject to termination <u>will become willing and able to provide the child with a safe family home</u>, even with the assistance of a service plan, within <u>a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care</u>;

(3) The proposed permanent plan is in the best interests of the child. . . .

(Emphases added).

FOFs 65-66, which are not clearly erroneous.  See Doe, 95 Hawaiʻi at 190, 20 P.3d at 623.

For all of the foregoing reasons, COLs 12, 13, and 15, which contain mixed questions of fact and law, are not clearly erroneous.  See id. (applying clearly erroneous standard of review to mixed questions of fact and law, which are dependent on the facts and circumstances of each individual case).  We conclude that Father's contentions on appeal are without merit.

Therefore, for the foregoing reasons, we affirm the April 20, 2022 Order Terminating Parental Rights filed by the Family Court of the First Circuit.

DATED:  Honolulu, Hawaiʻi, January 23, 2023.

On the briefs:

Tae Chin Kim,
for Father-Appellant.

Kurt J. Shimamoto,
Deputy Attorney General,
for Petitioner-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge